# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA L. MADRID, | Case No. 1:21-cv-00352-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE |
| Defendant. | (ECF Nos. 13, 17) |
| | **FOURTEEN DAY DEADLINE** |

## I.

## INTRODUCTION

Lisa L. Madrid ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs in support of summary judgment of this action, which were submitted, without oral argument. For the reasons set forth below, the Court issues the following findings and recommendations recommending Plaintiff's social security appeal be granted.

/ / /

/ / /

/ / /

1

## II.

## BACKGROUND

### A.    Procedural History

On June 1, 2017, Plaintiff filed a Title II application for a period of disability insurance benefits, alleging a period of disability beginning on November 27, 2016.  (AR 157-58.) Plaintiff's application was initially denied on September 12, 2017, and denied upon reconsideration on February 14, 2018.  (AR 89-93, 98-102.)  Plaintiff requested and received a hearing before Administrative Law Judge Shiva Bozarth (the "ALJ").  Plaintiff appeared for a hearing before the ALJ on November 14, 2019.  (AR 36-62.)  On April 1, 2020, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 17-32.)  The Appeals Council denied Plaintiff's request for review on August 18, 2020.  (AR 6-11.)

On March 8, 2021, Plaintiff filed this action for judicial review.  (ECF No. 1.)  On June 17, 2022, Defendant filed the administrative record ("AR") in this action.  (ECF No. 8.)  On September 29, 2022, Plaintiff filed an opening brief.  (Pl.'s Opening Br. ("Br."), ECF No. 13.) On November 21, 2022, Defendant filed an opposition brief.  (Def.'s Opp'n ("Opp'n"), ECF No. 17.)  Plaintiff did not file a reply brief.

### B.    The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, April 1, 2020:

1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2022.

2.  The claimant has not engaged in substantial gainful activity since November 27, 2016, the alleged onset date (20 CFR 404.1571 et seq.).

3.  The claimant has the following severe impairments: degenerative disc disease, degenerative joint disease of the bilateral hips, and Grave's disease (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404,

Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b).

6.  The claimant is capable of performing past relevant work as a caseworker.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from November 27, 2016, through the date of this decision (20 CFR 404.1520(f)).

(AR 22-28.)

## III.

## LEGAL STANDARD

### A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[1] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[2] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

---

[1] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[2] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[3] A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

---

[3] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

4

1    At step five, the burden shifts to the Commissioner, who must then show that there are a

2    significant number of jobs in the national economy that the claimant can perform given her RFC,

3    age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d

4    1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational

5    Guidelines ("grids"), or rely upon the testimony of a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2;

6    Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).

7    "Throughout the five-step evaluation, the ALJ is responsible for determining credibility,

8    resolving conflicts in medical testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at

9    1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

10   **B.    Standard of Review**

11   Congress has provided that an individual may obtain judicial review of any final decision

12   of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).

13   In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised

14   by the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir.

15   2001).  Further, the Court's review of the Commissioner's decision is a limited one; the Court

16   must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42

17   U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is

18   relevant evidence which, considering the record as a whole, a reasonable person might accept as

19   adequate to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir.

20   2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995));

21   see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence

22   standard to the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary

23   sufficiency is not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means

24   more than a scintilla, but less than a preponderance; it is an extremely deferential standard."

25   Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal

26   quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

27   Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is

28   harmless.  Stout, 454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not

1 harmless "normally falls upon the party attacking the agency's determination."  <u>Shinseki v.</u>

2 <u>Sanders</u>, 556 U.S. 396, 409 (2009).

3  Finally, "a reviewing court must consider the entire record as a whole and may not affirm

4 simply by isolating a specific quantum of supporting evidence."  <u>Hill v. Astrue</u>, 698 F.3d 1153,

5 1159 (9th Cir. 2012) (quoting <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006)).

6 Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may

7 review only the reasons stated by the ALJ in his decision.  <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th

8 Cir. 2007); <u>see also</u> <u>Connett v. Barnhart</u>, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is

9 not this Court's function to second guess the ALJ's conclusions and substitute the Court's

10 judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational

11 interpretation, it is the ALJ's conclusion that must be upheld."  <u>Ford</u>, 950 F.3d at 1154 (quoting

12 <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005)).

13 **IV.**

14 **DISCUSSION AND ANALYSIS**

15  The ALJ found that Plaintiff had the severe impairments of degenerative disc disease,

16 degenerative joint disease of the bilateral hips, and Grave's disease.  (Ar. 22.)  The ALJ found

17 that Plaintiff "also has a history of carpal tunnel syndrome and trigger finger, but these

18 impairments do not appear to cause more than a minimal restriction in her ability to work and are

19 not severe."  (<u>Id.</u>)  The ALJ further concluded that Plaintiff's medically determinable mental

20 impairments of anxiety and depression, considered singly and in combination, do not cause more

21 than minimal limitation in the claimant's ability to perform basic mental work activities and are

22 therefore nonsevere."  (<u>Id.</u>)

23  Plaintiff contends the ALJ erred at step two of the five-step sequential evaluation when

24 he failed to find somatoform disorder, generalized anxiety disorder, major depressive disorder,

25 and various hand impairments, to be severe.  (Br. 8.)  Plaintiff argues the ALJ disregarded the

26 severity of Plaintiff's signs and symptoms as confirmed by medical records, including exam

27 findings, objective test results and consistent complaints of pain and resulting limitations; and

28 that the ALJ failed to address in its entirety the medically established diagnosis of somatoform

disorder without indicating whether he determined it to be severe or non- severe; and ignored substantial medical evidence.

## A.    General Legal Standards Pertaining to Step Two

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." Smolen, 80 F.3d at 1289–90. "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual['s] ability to work.' " Smolen, 80 F.3d at 1290 (citations omitted). Step two is a "de minimis screening devise to dispose of groundless claims." Id. "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.' " Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting S.S.R. 85-28). The ALJ is "required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining their severity." Smolen, 80 F.3d at 1290 (citations omitted). "Thus, applying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." Webb, 433 F.3d at 687.

Any error in failing to find impairment severe at step two is harmless where the ALJ considers the limitations posed by the impairment in the step four analysis. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); see also Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017) (Where the ALJ ultimately decided step two in the claimant's favor, she "could not possibly have been prejudiced" at this stage of the analysis.).

## B.    The Parties' Arguments Concerning Mental Health Issues

The Court first summarizes the parties' arguments concerning Plaintiff's mental health limitations.

### 1.    Plaintiff's Arguments Concerning Somatoform and Other Mental Conditions

Regarding somatoform disorder, Plaintiff maintains the ALJ erred in failing to address the established diagnosis in its entirety in the opinion, emphasizing somatoform disorder is

recognized as a listed impairment.  Plaintiff argues the medical evidence here repeatedly indicates Plaintiff's pain is out of proportion to the medical findings.  (See AR 338, 417-18, 443, 444, 459, 489, 645.)  Plaintiff specifically notes that on September 24, 2014, Dr. Yvonne Love examined Plaintiff and diagnosed not only major depressive disorder, severe, but also confirmed the diagnosis of somatic symptom disorder with predominant pain, persistent type, moderate in severity.  (AR 374.)  On April 3, 2016, Dr. James B. Shaw examined Plaintiff and diagnosed somatoform disorder after noting that she "manifests emotional distress over ongoing pain issues." (AR 413- 414, 417.)  Plaintiff maintains that the medical evidence supports the presence of the diagnosis.

As to severity, Plaintiff argues the record makes clear that excessive pain behaviors have significantly affected Plaintiff's day to day functioning in a material way.  For instance, Plaintiff directs the Court to her testimony that (perceived) pain prevented her from standing long enough to cook a meal (AR 47), prevented her from driving (AR 48), rendered her unable to sit for longer than 20-25 minutes (AR 51), to use her hands no longer than 10 minutes (AR 53), and that her only comfortable position was laying down (AR 51).  (Br. 11.)  Plaintiff highlights her pain was noted to cause her to become "stressed out and unable to concentrate." (AR 234.)  Further, when faced with stress, Plaintiff explained that she was prone to attacks of anxiety.  (AR 240.)  Plaintiff argues these assertions were corroborated by her husband when he noted that his wife's daily and social activities were diminished as a result of pain.  (AR 214-219.)  Plaintiff submits despite the above evidence, the ALJ failed to articulate whether he considered this impairment to be severe or nonsevere, and simply ignored this evidence in its entirety.

Plaintiff argues the ALJ further erred when he failed to consider major depression and anxiety disorders to be severe, and that in doing so, the ALJ improperly discounted the findings of Dr. Yadeger, examining physician, and altogether ignored the findings of Dr. Love.  Plaintiff highlights Dr. Yadegar directly examined Plaintiff at the request of the agency in August of 2017, opining that: Plaintiff suffered from both anxiety disorder and generalized anxiety disorder; Plaintiff suffered from moderate impairments in her ability to maintain regular attendance and complete a normal workday and workweek without interruptions from a

psychiatric condition, as evidenced by poor judgement, poor insight, poor memory and poor reversibility; and that Plaintiff suffered from moderate impairments in her ability to deal with the usual stress encountered in the workplace, as evidenced by poor insight, poor judgement, poor memory, poor reversibility and poor concentration. (AR 343-44.)

While the ALJ found Dr. Yadegar's opinion "not consistent with, or supported by, the treatment records or the examination findings in his own report" (AR 23), Plaintiff argues the ALJ did not articulate in what way Dr. Yadegar's opinion was "inconsistent with" his own report. (Br. 12.) In this regard, Plaintiff argues the opinion was supported by Dr. Yadegar noting Plaintiff's mental status exam was positive for poor insight, poor judgement, poor memory, poor reversibility and poor concentration. (AR 344.) Plaintiff argues the ALJ failed to articulate which records and how those records refuted Dr. Yadegar's opinion. (Br. 13.)

Plaintiff argues the ALJ willfully overlooked the conclusion of Dr. Love who conducted a thorough review of Plaintiff's records and examined the Plaintiff, reaching the conclusion that she suffered from "major depressive disorder, recurrent episode, severe with anxious distress." (AR 374.) Plaintiff highlights Dr. Love stated "the results of psychological testing were consistent with the clinical presentation and objective assessment results indicate there persists significant reduction in functioning in more than one area (work/social/written expression)." (AR 377.) Plaintiff emphasizes this is the only other direct psychological testing of record, and therefore any finding that Dr. Yadegar's assessment is "inconsistent" with other medical records should have included an analysis of any purported differences between the findings of Dr. Yadegar and Dr. Love. Plaintiff suggests that in light of the fact that the ALJ failed to support his rejection of Dr. Yadegar's opinion and ignored Dr. Love's opinion entirely, remand is compelled.

2.    Defendant's Arguments Concerning Somatoform and Other Mental Conditions

Defendant emphasizes the same principal reason given by the ALJ in analyzing the mental health impairments, the finding that Plaintiff did not receive any formal mental health treatment beyond medication. (AR 25.) Defendant notes Plaintiff was prescribed Wellbutrin by her primary care physician, and apparently did not need any specialized mental health treatment

1   (AR 25, 319-320).  See Alonzo v. Colvin, No. 1:14-CV-00460-SKO, 2015 WL 5358151, at *12

2   (E.D. Cal. Sept. 14, 2015) ("Although Plaintiff argues it is inappropriate for an ALJ to make any

3   assumptions about why a person with a mental health issue does not seek treatment . . . here

4   Plaintiff did seek mental treatment from her physicians in the form of anti-depressant

5   medication, but claims to continue having a disabling level of symptoms[,] [however,] [i]f

6   Plaintiff's symptoms were as severe as alleged, it is a rational inference that she would have

7   sought additional and specialized treatment for her depressive episodes [and therefore] [t]his was

8   a legitimate and specific basis to doubt Plaintiff's statements about the degree of her depressive

9   symptoms and to assign less weight to Dr. Latter's opinion based upon Plaintiff's own

10  statements.").

11        Defendant contends the evidence in this very limited record, shows, including after her

12  alleged onset date, that Plaintiff appeared to have largely normal mental status, which provides

13  additional support for the ALJ's interpretation.  (AR 23, 80-81, 690, 693.)  Defendant argues that

14  in assessing the severity of Plaintiff's impairments, the ALJ properly resolved the conflicts in the

15  medical opinions, and properly relied on the assessments of the agency physicians who opined

16  that Plaintiff's mental impairments were not severe, assessments that were consistent with the

17  overall record showing treatment limited to medication, with no formal mental health treatment,

18  and largely benign examination findings in the limited record.  (AR 23, 69, 81-82).  Defendant

19  emphasizes that like the ALJ, those doctors also rated Plaintiff's limitations as "mild" (not

20  severe) in all relevant areas under the regulations, (AR 22-23, 68-69, 81-82).  See 20 C.F.R. §

21  404.1520a (evaluation of mental impairments by rating the degree of functional limitations in

22  relevant areas; "If we rate the degrees of your limitation as "none" or "mild," we will generally

23  conclude that your impairment(s) is not severe").  As the ALJ further explained, the agency

24  physicians' assessments were consistent with the longitudinal medical evidence and more

25  persuasive (Tr. 35).

26        Defendant argues that although Dr. Yadegar opined Plaintiff had some moderate mental

27  limitations in August 2017, he did not have the benefit of a longitudinal view of Plaintiff's

28  response to the limited treatment she received; and Dr. Yadegar acknowledged that, with

10

1    treatment, Plaintiff's prognosis was good and would improve within 12 months.  (AR 341-344).

2    Defendant argues the ALJ rightly found the opinion was not supported by the overall record,

3    especially the limited treatment for her condition, or the examiner's own, largely benign

4    examination findings.  (AR 23, 81-82.)  Defendant submits that contrary to Plaintiff's contention,

5    the ALJ did not overlook any probative medical opinions, and in particular, Dr. Love's earlier

6    opinion was that Plaintiff could work with no significant mental health limitations.  (AR 371,

7    374.)

8         As for somatoform disorder, Defendant notes Plaintiff's doctors apparently referred to

9    that condition in September 2014 and April 2016, prior to her alleged of disability, because they

10   could not explain her high level of worry and thoughts about illness (AR 369, 413, 417-418, 435,

11   440-442); and moreover, Dr. Love apparently believed Plaintiff did not have significant

12   limitations affecting her ability to work despite her somatic concerns.  (AR 369, 371.)  Defendant

13   contends there is no indication of similar references to a somatic condition "or speculation" in

14   the record after Plaintiff's alleged onset of disability.  Additionally, Defendant argues Plaintiff,

15   in briefing, did not discuss the lack of formal mental health treatment supporting the ALJ's

16   determination that Plaintiff's mental impairments were not severe and explain why this evidence

17   was not substantial with regard to any of her mental impairment(s), and instead, Plaintiff focuses

18   on limited evidence predating her alleged onset of disability.  Therefore, Defendant argues the

19   Court should not consider contentions that are insufficiently developed.

20        Finally, Defendant argues any ALJ error would be harmless because the ALJ continued

21   to address all of Plaintiff's impairments including her subjective allegations, and the extent of

22   her treatment for mental health and hand and trigger finger issues beyond step two.  (AR 24-27.)

23   **C.    Somatoform Disorder Generally and Concerning the ALJ's Summary of Dr.**
24        **Shaw's Opinion**

25        While the parties proceed on the basis that the ALJ did not acknowledge somatoform

26   disorder, the Court notes that in making the RFC determination, the ALJ did reference Dr.

27   Shaw's report, stating "Dr. Shaw diagnosed chronic pain syndrome, trigger finger,

28   myalgia/widespread pain complaints, and a history of headaches . . . opined that the claimant was

at maximum medical improvement . . . [and] noted that the claimant manifested the persistence of her widespread, multifocal pain syndrome in a number of body parts and her activity limiting pain appeared to have waxed and waned with her baseline psychological status." (AR 26.)  The Court describes this portion of Dr. Shaw's report in greater detail below.

As shown below in the Court's review of caselaw and other authorities, in short, there appear to be complicated issues surrounding somatoform disorder in relation to other pain disorders, and the parties do not appear to acknowledge the ALJ's reference to these pages of Dr. Shaw's opinion in relation to his discussion of somatoform.  Nor have the parties provided or discussed any caselaw that describes the condition or that analyzes where an ALJ errs or does not err in analyzing or failing to analyze the condition in relation to other mental health conditions. Given the ALJ's summary references Dr. Shaws's reference to chronic pain syndrome, myalgia/widespread pain complaints, and statement that the multifocal pain syndrome indeed waxes and wanes with Plaintiff's baseline psychological status, the Court turns to authorities that reference the disorder.

"The listings for mental disorders are arranged in 11 categories: Neurocognitive disorders (12.02); schizophrenia spectrum and other psychotic disorders (12.03); depressive, bipolar and related disorders (12.04); intellectual disorder (12.05); anxiety and obsessive-compulsive disorders (12.06); **somatic symptom and related disorders (12.07)**; personality and impulse-control disorders (12.08); autism spectrum disorder (12.10); neurodevelopmental disorders (12.11); eating disorders (12.13); and trauma- and stressor-related disorders (12.15)."  20 C.F.R. § Pt. 404, Subpt. P, App. 1 (emphasis added).  "Listings 12.07, 12.08, 12.10, 12.11, and 12.13 have two paragraphs, designated A and B; your mental disorder must satisfy the requirements of both paragraphs A and B."  Id.  The regulations provide the following description of Listing 12.07:

Somatic symptom and related disorders (12.07).

a. These disorders are characterized by physical symptoms or deficits that are not intentionally produced or feigned, and that, following clinical investigation, cannot be fully explained by a general medical condition, another mental disorder, the direct effects of a substance, or a culturally sanctioned behavior or

experience. These disorders may also be characterized by a preoccupation with having or acquiring a serious medical condition that has not been identified or diagnosed. Symptoms and signs may include, but are not limited to, pain and other abnormalities of sensation, gastrointestinal symptoms, fatigue, a high level of anxiety about personal health status, abnormal motor movement, pseudoseizures, and pseudoneurological symptoms, such as blindness or deafness.

b. Examples of disorders that we evaluate in this category include somatic symptom disorder, illness anxiety disorder, and conversion disorder.

Id.

Some courts, ALJs, or medical authorities, appear to use the term somatoform disorder sometimes as a separate type of pain disorder, or in relation to or as a subset of chronic pain syndrome or other similar disorders or conditions. See Cuestas v. Kijakazi, No. 5:20-CV-08746-EJD, 2022 WL 4591776, at *2 (N.D. Cal. Sept. 29, 2022) ("At step two, the ALJ found Plaintiff has somatic symptom disorder, interstitial cystitis, chronic pain syndrome, morbid obesity, generalized anxiety disorder, major depressive disorder, and panic disorder."); Kuehu v. United Airlines, Inc., No. CV 16-00216 ACK-KJM, 2017 WL 2312475, at *4 (D. Haw. May 26, 2017) ("The LIRAB resolved conflicting evidence from various doctors and medical experts and determined that Plaintiff's condition is an undifferentiated somatoform disorder, not multiple chemical sensitivity, chronic pain syndrome, fibromyalgia, or candidiasis."); Michael Finch, *Law and the Problem of Pain*, 74 U. Cin. L. Rev. 285, 292 (2005) ("The medical community's acceptance of diagnoses for both fibromyalgia and somatoform pain disorder would suggest that, whether styled as an organic or mental illness, chronic pain syndrome has achieved medical legitimacy.").[4]

---

[4] Strom v. Astrue, No. CIV.07-150(DWF/RLE), 2008 WL 583690, at *18 (D. Minn. Mar. 3, 2008) ("Plaintiff had been diagnosed with a pain disorder associated with both psychological factors, and a general medical condition which had been diagnosed as chronic pain syndrome, myofascial pain syndrome and/or somatoform pain syndrome."); Hatcher v. Astrue, No. 09-14409-CIV, 2010 WL 5851123, at *1 (S.D. Fla. Nov. 29, 2010) ("She has a somatoform disorder and chronic pain syndrome with constant pain and spasm in her neck and headaches."); Sara Ann W. v. Comm'r of Soc. Sec., No. 2:17-CV-00277-RHW, 2018 WL 4088771, at *4 (E.D. Wash. Aug. 27, 2018) ("Plaintiff contends that the ALJ erred by characterizing her impairment as 'pain disorder' and finding it a severe impairment at step two, rather than specifically characterize the impairment as 'somatoform disorder' or 'somatoform pain disorder.' "); Joseph S. v. Saul, No. 4:20-CV-05075-MKD, 2021 WL 9816444, at *4 (E.D. Wash. Mar. 29, 2021) ("Plaintiff argues the ALJ failed to address Plaintiff's somatoform disorder, [] however the ALJ addressed it and the finding was supported by substantial evidence . . . [and] [a]dditionally, the ALJ found Dr.

**D.      References to Somatoform & the ALJ's Reference to Dr. Shaw's Report**

Having provided some background, the Court now turns to summarize the relevant discussion in the record related to somatic conditions, particularly as contained in Dr. Shaw's report, and the ALJ's reference thereto.

Dr. Shaw issued a report entitled a "Represented Qualified Medical Re-Evaluation," dated April 3, 2016.  (AR 409-450, Ex. 7F at 1-42.)   Under diagnoses, first, Dr. Shaw lists: "Chronic pain syndrome.  It is noted that subjective complaints are out of proportion to objective findings."  (Ex. 7F at 31, AR 439.)  Second, Dr. Shaw lists: "Trigger finger, left ring finger, history/improved, largely resolved."  (Id.)  Third, Dr. Shaw lists: "Myalgia/Widespread pain complaints/multiple regions of pain complaints difficult problem with co-morbid issues."  (Id.)  Fourth. Dr. Shaw lists: "History Headache."  (Id.)  Dr. Shaw notes that:

> Clinically, the patient is markedly somatically focused regarding her "pain symptoms."  The patient presents in a hyper vigilant manner regarding vague somatic complaints – non anatomic.  Somatization is a tendency to experience and communicate psychological distress in the form of somatic symptoms and to seek medical help for them.  More commonly expressed, it is the generation of physical symptoms of a psychiatric condition such as anxiety.

(AR 440.)  Dr. Shaw described generally the relationship between somatization and anxiety, and as to the Plaintiff, and pain disorders generally:

> Pain and corollary symptoms that are outside the confines of neurological impairments e.g. nondermatomal sensory loss are construed as nonorganic [citation].  The patient reports a number of symptoms that are highly suspect in regards to an organic orthopedic basis-ear complaints etc.

---

Smiley's diagnosis of chronic pain syndrome was not supported by the evidence[,] Plaintiff does not challenge the ALJ's finding regarding chronic pain syndrome [and] [a]s the ALJ's finding that Plaintiff's somatoform disorder and chronic pain syndrome are not severe impairments is supported by substantial evidence, the ALJ reasonably rejected Dr. Smiley's opinion that Plaintiff would have missed work due to those conditions."); Foxx v. Apfel, No. CIV.A.98-0787-P-L, 2000 WL 1137221, at *5 (S.D. Ala. July 19, 2000) ("The plaintiff, Dr. Hinton found, also had been diagnosed with chronic pain syndrome, which qualified as a 12.07 somatoform disorder, and had a history of treatment for chemical dependency."); Perry v. Astrue, No. CIV.07CV276L(JMA), 2009 WL 435123, at *9 (S.D. Cal. Feb. 19, 2009) ("The ME, a psychiatrist, testified that Plaintiff had depression, not otherwise specified (Listing 12.04 of the Listing of Impairments),[5] secondary to pain, a somatoform disorder (Listing 12.07),[6] and chronic pain syndrome (Listings 12.07A3 and 12.07)."); Foglio v. Colvin, No. 12 C 5270, 2014 WL 684643, at *12 n.9 (N.D. Ill. Feb. 19, 2014) ("Somatoform disorder and chronic pain syndrome both refer to chronic pain with a psychological, rather than physical, cause.").

Somatization is the conversion of anxiety to physical symptoms. Patients who somatize psychosocial distress commonly present in medical clinical settings. Approximately 25% of patients in primary care demonstrate some degree of somatization, and at least 10% medical or surgical patients have evidence of a disease process. Somatization patient[s] use a disproportionately large amount of medical services and can frustrate their physicians, who often do not recognize the true nature of this patient's problems. Somatizers continue to seek medical care in nonpsychiatric settings where somatozation is often not recognized.

Somatization is not an all or none opposition. Rather a number of patients have some evidence of disease but over respond to their symptoms, or believe themselves more disabled than objective evidence would dictate.

Pain disorder is diagnosed when pain is the predominant focus of clinical presentation, when the pain causes significant distress or functional impairment psychological factors are judged to have an important role in the onset, severity, exacerbation, or maintenance of the pain (American Psychiatric Association).

The assessment of pain-related impairment constitutes a substantial challenge, as it is the most common reason for disability, the most subjective, and perhaps the most multifaceted. Equitable quantification of impairment requires attention to subjective experiences of pain and emotional distress, as well reports of behavioral impairment, all which can only be confirmed indirectly.

Despite these obstacles, it appears that each of these can be assessed with good reliability if meticulous evaluation is performed that includes observation and collateral information. The following are accepted indicators for evaluation:

There were some pain behaviors observed during the examination, and they appear congruent with the organ dysfunction from hip arthritis.

The patient demonstrates moderate to severe affective distress in relation to their pain.

The individual demonstrate[s] significant pain related limitations on physical examination, some pain behaviors appear during the examination, and they are in determinant appropriateness.

Portions of the physical examination were virtually impossible to perform because the patient was intolerant of many examination maneuvers, and it is difficult to interpret relative the underlying organ dysfunction.

Headache, is subjective, without reliable, objective markers; is multidetermined, and calls for comprehensive, multifactorial approach. The medical record indicates headaches and stress dating back over 10 years, and with some regularity are described as bilateral occipital. Today she describes her headaches as the

entire head. Ms. Madrid has reported the onset of tinnitus in the last several months. Ms. Madrid denies ear pain, but describes chronic drainage, and medical records had indicated middle ear infection previously in 2004.

**In summary, the patient manifests persistence of her widespread, multifocal pain symptoms in a number of body parts, and her activity limiting pain appears to have waxed and waned with her baseline psychological status.** There is a significant past medical history in this case with insufficient information a[s] to new physical injuries. I have previously [] evaluated the patient, and at time noted subjective factors of disability. It must be acknowledged that great care should be taken in interpreting subjective factors of disability is patient's with significant psychological co-morbidities as in this case.

(Ex. 7F at 33-34, AR 441-442 (emphasis added).)

Dr. Shaw then noted that "Dr. Love PQME has addressed the psychological and profound psychiatric conditions in this complicated case," and stated "[t]he patient remains at maximum medical improvement." (Ex. 7F at 35, AR 443.)   Under the heading causation, Dr. Shaw additionally noted that: "The injuries evaluated in this case are extensive and complicated, and include a time line of 14 years . . . [a]ll these complaints appear to have one constant has been they all related to her baseline psychological state," that "[t]he patient's pain complaints are out of proportion to what would normally be anticipated, and lack biomedical correlates/objective factors of disability," and that "[t]he patient's physical examination is marked with positive Waddell Signs." (Id.)

The ALJ's opinion contains the following summary of Dr. Shaw's findings, and specifically references Exhibit 7F at 34-35, and a chronic pain syndrome/multifocal pain syndrome:

Dr. Shaw diagnosed chronic pain syndrome, trigger finger, myalgia/widespread pain complaints, and a history of headaches (Exhibit 7F, p. 31). He opined that the claimant was at maximum medical improvement (Exhibit 7F, p. 35). He noted that the claimant manifested the persistence of her widespread, multifocal pain syndrome in a number of body parts and her activity limiting pain appeared to have waxed and waned with her baseline psychological status (Exhibit 7F, p. 34).

(AR 26.)

Dr. Love issued a panel qualified medical examination report dated September 24, 2014.

Therein, Dr. Love noted that the Whaler Physical Symptoms Inventory "score reflects a somatization tendency and many physical problems." (Ex. 6F at 17, AR 369.)  On the P3 Pain Scale chart, Plaintiff is noted as having a score of 65 for depression and anxiety, and a score of 63 for somatization, both noted as above average.  (Id.)  However, the report then notes:

> Interpretation of the validity scales suggest that this test cannot be interpreted with confidence.  Response set indicates that the patient is exaggerate in her reporting style and is experiencing a very high level of concern regarding pain.  The patients Somatization scores are considerably above average for pain patients and her responses suggest that her health and energy levels are poor.  As compared to the scores of other pain patients, as well as community subjects, this patient's Depression score suggests that she is extremely depressed and is experiencing serious affective distress.  The patient's profile suggests that not only that she is more depressed than the average community subject, she also has more somatic concerns than the average pain patient.  The same applies to her anxiety concerns.  The patients anxiety score, however, is above average when compared to a community subject and is considerably above average for pain patients.

(Id.)  Dr. Love further noted that

> Ms. Madrid endorsed a high number of clinical symptoms of mood and somatic type at the initial evaluation, including passive ideation related to suicide.  Most of the observable symptoms have been objectively observed as mild to moderate levels, which demonstrates a significant discrepancy in symptom presentation.  Psychological test results indicated a tendency to overreport and exaggerate reactive emotional responses.  It does not appear she will require continued treatment to cure the effects of the industrial injury, yet psychiatric treatment on a non-industrial basis is indicated.
>
> I recommended individual therapy on a non-industrial basis to address symptoms of Major Depressive Disorder related to chronic hypothyroidism, menopause and chronicity of pain due to multiple injuries, including past injuries sustained in non-industrial accidents.

(Ex. 6F at 21, AR 373.)  Dr. Love's diagnostic impression included: major depressive disorder, recurrent episode, severe with anxious distress, mood disorder due to hypothyroidism, and somatic symptom disorder,[5] with predominant pain, persistent type, moderate severity.  (AR

---

[5]  As noted within Dr. Shaw's report, the "Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5) no longer recognizes Somatization disorder, and instead proposes the diagnosis of somatic symptom disorder for individuals that in the past would have received the diagnosis of Somatization disorder." (AR 417.)  In this regard, the Court notes Plaintiff's brief states that "[t]his doctor [referring to Dr. Shaw,] also diagnosed somatoform disorder after noting that she 'manifests emotional distress over ongoing pain issues.' " (Br. 11,

374.)  Dr. Love noted "I rate this claimant at zero to extremely low risk for suicidal behavior. (AR 376.)

As Plaintiff notes in briefing, Dr. Love further stated that "[t]he results of psychological testing were consistent with the clinical presentation," and "[o]bjective assessment results indicate there persists significant reduction in functioning in more than one areas (work/social/written expression.[)]"  (AR 377.)  Plaintiff emphasizes "this is the only other direct psychological testing of record," aside from Dr. Yadegar.  (Br. 13.)  However, as Defendant correctly notes, Dr. Love also stated in the report that "[f]rom a psychological perspective, Ms. Madrid is capable of full-time work," that [c]urrently, she is reporting psychological symptoms of a severity that prevent her from carrying on in any work setting, yet there is evidence of exaggeration and overreporting," that "[a]t our appointment, Ms. Madrid presents as anxious, calm, and preoccupied with conspiracy theories specific to her work Supervisors," and concluded "[s]he can work full-time with the noted physical restrictions per her medical specialists."  (AR 371.)

**E.    The Court Finds the ALJ Erred at Step Two and the Error was not Harmless**

Having described the records that Plaintiff relies on that refer to somatoform (Dr. Love and Dr. Shaw), and having found the ALJ did reference somatoform in some regards by referencing Dr. Shaw's opinion concerning chronic pain syndrome, the Court now turns to specific caselaw that raised similar arguments to the Plaintiff here.  Again, neither party provided the Court with any caselaw concerning somatoform in relation to other health conditions, mental or physical.  Further, Defendant's briefing does not appear to reference Dr. Shaw's opinion at all, nor the ALJ's reference to it.

Courts have found an absence of any reference to somatization or diagnosis of somatoform disorder to be error.  See Iverson v. Astrue, No. C12-391-MJP-BAT, 2012 WL 5330978, at *4 (W.D. Wash. Oct. 9, 2012), report and recommendation adopted, No. C12-391-

---

quoting AR 413-14, 417.)  However, these pages do not appear to contain a diagnosis of "somatoform disorder" by Dr. Shaw, but rather an insertion of information pertaining to the disorder, and it appears the terms Dr. Shaw are consistent with the Court's summary above.

MJP, 2012 WL 5330976 (W.D. Wash. Oct. 29, 2012).  In <u>Iverson</u>, the plaintiff argued, somewhat differently than here in regards to step 3, that "the ALJ erred by failing to consider somatoform disorder at steps two and three and for failing to use the special technique for evaluating mental impairments with respect to this impairment."  <u>Id.</u> at *2-3 ("But the ALJ did not mention somatoform disorder in her step two or step three analyses, or elsewhere in the decision.).  The court found evidence of a colorable claim:

> The court finds that this omission was erroneous. Although Ms. Iverson's treating providers did not diagnose somatoform disorder, an examining doctor and mental health professional opined that Ms. Iverson had somatoform disorder, that the disorder caused at least some impairment in her functioning, and that the disorder met a listing. Two reviewing doctors affirmed the diagnosis and opined that Ms. Iverson's mental impairments, including somatoform disorder, were severe. This evidence presents a colorable claim that somatoform disorder was a severe impairment. If the ALJ chooses to disregard these opinions, the ALJ must, at the very least, provide specific and legitimate reasons for doing so. *Lester v. Chater,* 81 F.3d 821, 830–31 (9th Cir.1996). Here, the ALJ gave no reasons, despite giving weight to the opinions later in the decision.
>
> The Commissioner argues that the record supported "the ALJ's finding" that somatoform disorder did not cause Ms. Iverson significant, work-related mental limitations. Dkt. 15 at 7. But the ALJ made no such finding; rather, the ALJ made no findings at all related to somatoform disorder, despite the fact that plaintiff's counsel argued at the hearing that somatoform disorder was a severe impairment and that it met a listing. Tr. 34.

<u>Iverson</u>, 2012 WL 5330978, at *3. [6]

As for the whether the error was harmless, the court in <u>Iverson</u> found it significant that the disorder was not mentioned at all in the opinion, and thus the court could not determine if the ALJ considered the effects of the disorder at the later steps:

> The Commissioner also argues that "because Plaintiff's longitudinal treatment records did not demonstrate Plaintiff experienced disabling limitations, any ... error is harmless." Dkt. 15 at 10. The Commissioner's argument puts the cart before the horse. The question at step two is not whether a claimant is disabled; rather, it is whether she has an impairment that is medically determinable and severe. An ALJ's failure to properly

---

[6]  The specific and legitimate reason standard does not apply in this action.  <u>See</u> Woods v. Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022).  Of note, Plaintiff's counsel in <u>Iverson</u> specifically argued regarding somatoform at the hearing, and argued it met a listing.  <u>Iverson</u>, 2012 WL 5330978, at *3.  It does not appear somatoform was mentioned at the hearing in this matter.

> consider an impairment at step two may be harmless where the ALJ considered the functional limitations caused by that impairment later in the decision. *Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir.2007). But here, the ALJ failed to even mention somatoform disorder anywhere in the decision, leaving no means for the Court to determine whether the ALJ considered the effects of this disorder at the later steps.

Iverson, 2012 WL 5330978, at *4.   The court in Iverson found the omission particularly significant given the interrelation of the somatoform disorder with other mental disorders:

> The ALJ's omission was also problematic because the ALJ failed to document application of the special technique with respect to somatoform disorder. Although the ALJ made findings about Ms. Iverson's limitations in the four functional areas with respect to her PTSD and personality disorder, there is nothing to show that the ALJ included the effects of somatoform disorder in this analysis. This failure was reversible error. *Keyser,* 648 F.3d 726.
>
> Moreover, the ALJ is required to consider the combined effects of a claimant's impairments, even if an impairment by itself would not rise to the level of a severe impairment. 20 C.F.R. § 416.923. If a combination of impairments is medically severe, the ALJ must consider the combined impact throughout the disability determination process. *Id.* The claimant's impairments " 'must not be fragmentized in evaluating their effects.' " *Lester,* 81 F.3d 828 (quoting *Beecher v. Heckler,* 756 F.2d 693, 694–95 (9th Cir.1985)). This is particularly true where the claimant has significant mental and physical impairments, each of which results in some restrictions on her ability to function. *Id.* at 829. Here, there is nothing to indicate that the ALJ considered somatoform disorder in combination with any other impairments, either mental or physical. This omission is particularly glaring given that somatoform disorder is defined by reference to physical symptoms. *See* 20 C.F.R. Pt. 404 Subpt. P, App. 1, § 12.07 (somatoform disorders are "Physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms").

Iverson, 2012 WL 5330978, at *4.

In Johnson, the Defendant did not dispute somatoform was not mentioned in the ALJ's opinion.  Johnson v. Astrue, No. 6:11-CV-00044-TC, 2012 WL 2049481, at *3 (D. Or. Apr. 25, 2012) ("The Commissioner, however, does not dispute that the ALJ wholly failed to address Johnson's somatoform disorder in his decision."), report and recommendation adopted, No. 6:11 CV 00044-TC, 2012 WL 2048189 (D. Or. June 4, 2012).  In Johnson, the Commissioner contended that "if the ALJ should have considered Johnson's somatoform disorder at step two, such error was harmless because: (1) any limitations imposed by the somatoform disorder were

considered at other steps; and (2) the error will not change the outcome of this case." Id. The Johnson court did not consider the error harmless, particularly given the dissimilarity between a somatoform disorder and other types of mental disorder, such as anxiety:

> Here, the ALJ did not mention Johnson's somatoform disorder in his decision, but he did consider Johnson's non-specific cognitive disorder and anxiety at step two. (tr. 22). A non-specific cognitive disorder, however, is not the same as a somatoform disorder; a non-specified cognitive disorder is a diagnosis of confusion or memory impairment, whereas a somatoform disorder is a diagnosis of a physical affliction from a psychological cause. *See Herring v. Veterans Admin.,* 1996 WL 32147, *6 (9th Cir. Jan. 26, 1996) (Table) (a conversion disorder is a "form of a somatoform disorder-a psychiatric syndrome where the patient's symptoms suggest medical disease, but no demonstrable pathology accounts for the symptoms"); *Crayton v. Bowen,* 1989 WL 41721, *3 (9th Cir. Apr. 21, 1989) (Table) ("[s]omatoform disorders, including psychogenic pain disorder, 'present with physical symptoms suggesting a disease but for which no organic/physiologic disruption can be found,' " quoting a former version of 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.07); *Dschaak v. Astrue,* 2011 WL 4498832, *19–20 (D.Or. Aug. 15, 2011), *adopted by* 2011 WL 4498835 (D.Or. Sept. 25, 2011) (a cognitive disorder is a "direct physiological effect of a general medical condition" that results in cognitive impairments similar to dementia, delirium, or an amnestic disorder); *Murphy v. Comm'r Soc. Sec. Admin.,* 423 Fed.Appx. 703, 704–05 (9th Cir.2011) (somatoform disorder can, alone, be the basis of disability).
>
> Thus, the limitations that the ALJ assessed in conjunction with Johnson's cognitive disorder are insufficient to address her somatoform disorder, as these medical entities are distinct. Further, the ALJ's failure to consider Johnson's somatoform disorder was error warranting reversal, as Johnson has a colorable claim of mental impairment.

Johnson, 2012 WL 2049481, at *4–5.

On the other hand, the Court considers Spillane. Similar to here, anxiety and depression were related to the somatization disorder, however, in Spillane, the ALJ found anxiety and depression *were* severe at step two. Spillane v. Astrue, No. 2:11-CV-1000-EFB, 2012 WL 3993549, at *9 (E.D. Cal. Sept. 11, 2012). The court found the ALJ did not err in failing to consider somatization disorder, finding it significant that Plaintiff did not identify what functional limitations associated with the disorder were not considered by the ALJ:

> The ALJ actually found plaintiff's mental impairments (depression and anxiety) severe at step two for purposes of the decision. AR at 19–20. Given the favorable finding of severity, plaintiff cannot

complain of any prejudicial error at step two.

Plaintiff nevertheless also argues that the ALJ failed to consider her somatization disorder at step two and beyond. Although it is true that there are diagnoses of a somatization disorder in the record, plaintiff fails to identify what functional limitations associated with the somatization disorder had not been considered by the ALJ. *See Burch v. Barnhart,* 400 F.3d 676, 684 (9th Cir.2005) (explaining that the claimant "has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider"). The medical evidence clearly shows that the symptoms of her somatization disorder manifested as chronic pain, anxiety, and depression, and plaintiff concedes as much in her own briefing. *See* Pl.'s Mot. for Summ. J., Dckt. No. 21 at 6:4–5 ("Her somatoform disorder manifests with severe myofascial pain syndrome, depression, and anxiety.").

Stated differently, whether characterized as a somatization disorder, depressive disorder, or anxiety disorder (and the exact diagnoses here differ among plaintiff's treating and examining sources), the ALJ found plaintiff's manifesting symptoms of depression and anxiety to be severe at step two and properly considered their associated limitations at all steps of the sequential evaluation process, as discussed further below.

Spillane, 2012 WL 3993549, at *9.

Here, the Court finds the above authority in relation to the ALJ's opinion here, weigh in favor of granting Plaintiff's appeal.  First, the Court finds the failure to discuss the diagnosis of somatoform at step two was error.  See Iverson, 2012 WL 5330978, at *4 ("The Commissioner also asserts that symptoms of an impairment alone are insufficient to establish the existence of the impairment, and, similarly, that a diagnosis of an impairment alone is insufficient to establish the severity of the impairment . . . [w]hile these assertions are true, it is not the case that the only evidence for somatoform disorder is Ms. Iverson's statement of her symptoms or a diagnosis without any clinical assessment [as] Ms. Fergoda and Dr. Freedman administered the Personality Assessment Inventory and performed a clinical assessment of Ms. Iverson's functioning [and] [t]his evidence is sufficient to, at the very least, trigger an analysis of whether somatoform disorder is a severe impairment and whether it meets a listing.").

The Court finds the more critical question that of whether the error is harmless, particularly given the Court's review of the ALJ's reference to Dr. Shaw's opinion above at step

1   four.  Plaintiff argues any error is not harmless as the ALJ did not discuss the impairment of

2   somatoform disorder at step two or anywhere else in the determination, and this demonstrates the

3   ALJ did not consider the impairment singly or in combination with other mental health

4   impairments or any limitations resulting from the impairment singly or in combination, in his

5   analysis of Plaintiff's RFC, and if properly considered, would have found Plaintiff's RFC

6   contained greater restrictions.  Specifically, as to the mental RFC, Plaintiff submits the ALJ

7   should have adopted the finding that Plaintiff was unable to sustain skilled or semi-skilled work,

8   due to established limitations in the domains of concentration and memory (AR 344, 377), and

9   had the ALJ properly considered these limitations, he would have found Plaintiff unable to

10   perform her past work or any other work and would have found Plaintiff disabled pursuant to the

11   vocational expert's testimony (AR 59, 60).  (Br. 13-14.)

12       While Defendant states in briefing that Plaintiff submitted undeveloped arguments in the

13   opening brief (as to other subjects, not harmless error), the Court finds Defendant's arguments as

14   to harmless error not helpful.  Indeed, Defendant's opposition brief has essentially provided the

15   Court with no specific arguments, but simply points to the ALJ's RFC analysis as a whole.  (See

16   Opp'n 13 ("Finally, any ALJ error would be harmless because the ALJ continued to address all

17   of Plaintiff's impairments including her subjective allegations, and the extent of her treatment for

18   mental health and hand and trigger finger issues beyond step two ([AR] 24-27).").)

19       The Court considers whether it is apparent the ALJ considered the limitations posed by

20   the impairment at step four.  See Lewis, 498 F.3d at 911 ("The decision reflects that the ALJ

21   considered any limitations posed by the bursitis at Step 4.").  While the ALJ did reference Dr.

22   Shaw's diagnosis, and the fact that pain disorders waxed and waned with the baseline

23   psychological status (AR 26), there is no further discussion beyond this in the RFC

24   determination.  As for a discussion of the limitations of Plaintiff's other mental impairments

25   overall at step four, the ALJ only stated: "[a]s for the claimant's statements about the intensity,

26   persistence, and limiting effects of his or her symptoms, they are inconsistent because despite

27   complaints of mental symptoms, the claimant has not sought therapy or other mental health

28   treatment beyond medication from her primary provider."  (AR 25.)  While an argument could

1  be made that because Plaintiff's mental health symptoms were not severe enough to seek

2  treatment, the pain syndrome and pain based on the psychological status would thus be waning

3  rather than waxing and thus the RFC is appropriate, the opinion does not make such findings.

4  See Orn, 495 F.3d at 630 ("We review only the reasons provided by the ALJ in the disability

5  determination and may not affirm the ALJ on a ground upon which he did not rely.").

6      Based on Plaintiff's arguments concerning harmful error, and the lack of specific

7  response from Defendant, the Court finds harmful error, particularly given the relationship

8  between somatoform and other mental conditions, as well as physical pain.  See Iverson, 2012

9  WL 5330978, at *4 ("Although the ALJ made findings about Ms. Iverson's limitations in the four

10  functional areas with respect to her PTSD and personality disorder, there is nothing to show that

11  the ALJ included the effects of somatoform disorder in this analysis . . .  the ALJ is required to

12  consider the combined effects of a claimant's impairments . . . [t]his is particularly true where the

13  claimant has significant mental and physical impairments, each of which results in some

14  restrictions on her ability to function . . . [and] there is nothing to indicate that the ALJ

15  considered somatoform disorder in combination with any other impairments, either mental or

16  physical[,] [an] omission [] particularly glaring given that somatoform disorder is defined by

17  reference to physical symptoms."); Johnson, 2012 WL 2049481, at *4–5 ("[T]he limitations that

18  the ALJ assessed in conjunction with Johnson's cognitive disorder are insufficient to address her

19  somatoform disorder, as these medical entities are distinct."); c.f.  Joseph S. v. Saul, No. 4:20-

20  CV-05075-MKD, 2021 WL 9816444, at *5 (E.D. Wash. Mar. 29, 2021) ("[T]he ALJ took

21  Plaintiff's somatoform symptom disorder into consideration when crafting the RFC, as the ALJ

22  included limitations "over and above what was supported by his physical condition." Tr. 24-26.

23  As such, any error is harmless."); Sara Ann W. v. Comm'r of Soc. Sec., No. 2:17-CV-00277-

24  RHW, 2018 WL 4088771, at *4 (E.D. Wash. Aug. 27, 2018) ("Plaintiff contends that the ALJ

25  erred by characterizing her impairment as 'pain disorder' and finding it a severe impairment

26  at step two, rather than specifically characterize the impairment as 'somatoform disorder' or

27  'somatoform pain disorder[,]' . . . [but] [w]hile Plaintiff argues that the ALJ's characterization of

28  her disorder the ALJ found to be severe at step two is an error, Plaintiff does not describe any

24

1    additional limitations that were not included by the ALJ in assessing her residual functional

2    capacity [as] [h]ere, the ALJ found Plaintiff's pain disorder to be severe and accounted for the

3    symptoms.").

4         The Court further finds the case distinguishable from Spillane because there, the ALJ did

5    find the related and overlapping diagnoses severe, and thus the overlapping limitations were

6    considered at step four.  See Spillane, 2012 WL 3993549, at *9.  ("[W]hether characterized as a

7    somatization disorder, depressive disorder, or anxiety disorder (and the exact diagnoses here

8    differ among plaintiff's treating and examining sources), the ALJ found plaintiff's manifesting

9    symptoms of depression and anxiety to be severe at step two and properly considered their

10   associated limitations at all steps of the sequential evaluation process, as discussed further

11   below.").

12        Accordingly, the Court finds the ALJ erred at step two, and the error was not rendered

13   harmless at step four.

14        **F.    The Court finds Remand is Appropriate**

15        The ordinary remand rule provides that when "the record before the agency does not

16   support the agency action, . . . the agency has not considered all relevant factors, or . . . the

17   reviewing court simply cannot evaluate the challenged agency action on the basis of the record

18   before it, the proper course, except in rare circumstances, is to remand to the agency for

19   additional investigation or explanation."  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d

20   1090, 1099 (9th Cir. 2014).  This applies equally in Social Security cases.  Treichler, 775 F.3d at

21   1099.  Under the Social Security Act "courts are empowered to affirm, modify, or reverse a

22   decision by the Commissioner 'with or without remanding the cause for a rehearing.' "

23   Garrison, 759 F.3d at 1019 (quoting 42 U.S.C. § 405(g)).  The decision to remand for benefits is

24   discretionary.  Treichler, 775 F.3d at 1100.  In Social Security cases, courts generally remand

25   with instructions to calculate and award benefits when it is clear from the record that the

26   claimant is entitled to benefits.  Garrison, 759 F.3d at 1019.  Even when the circumstances are

27   present to remand for benefits, "[t]he decision whether to remand a case for additional evidence

28   or simply to award benefits is in our discretion."  Treichler, 775 F.3d at 1102 (quoting Swenson

1  v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989)).

2      The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which

3  must be satisfied in order for a court to remand to an ALJ with instructions to calculate and

4  award benefits: (1) the record has been fully developed and further administrative proceedings

5  would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for

6  rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly

7  discredited evidence were credited as true, the ALJ would be required to find the claimant

8  disabled on remand." Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).  The credit as true

9  doctrine allows "flexibility" which "is properly understood as requiring courts to remand for

10  further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an

11  evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled.

12  Garrison, 759 F.3d at 1021.

13      The Court finds that based on the ALJ's opinion and review of the record, significant

14  doubts remain as to whether Plaintiff is in fact disabled.  The Court orders this action remanded

15  for further administrative proceedings consistent with this opinion, and to further develop the

16  record as deemed necessary.  The Court declines to make specific findings as to whether the

17  ALJ's finding of Plaintiff's hand impairments as nonsevere would be proper in the absence of

18  error as to Plaintiff's somatoform symptom disorder.  See Iverson, 2012 WL 5330978, at *4

19  ("This is particularly true where the claimant has significant mental and physical impairments,

20  each of which results in some restrictions on her ability to function . . . [and] there is nothing to

21  indicate that the ALJ considered somatoform disorder in combination with any other

22  impairments, either mental or physical[,] [an] omission [] particularly glaring given that

23  somatoform disorder is defined by reference to physical symptoms.").

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

**V.**

**RECOMMENDATION AND ORDER**

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.      Plaintiff's appeal from the decision of the Commissioner of Social Security (ECF No. 13) be GRANTED; and

2.      The Clerk of the Court be DIRECTED to enter judgment in favor of Plaintiff Lisa L. Madrid and against Defendant Commissioner of Social Security and close this case.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of issuance of this recommendation, any party may file written objections to the findings and recommendations with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS FURTHER ORDERED that the Clerk of the Court be DIRECTED to randomly assign a District Judge to this action.

IT IS SO ORDERED.

Dated:   **April 5, 2023**

UNITED STATES MAGISTRATE JUDGE